IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 16-CV-02227

**THE ESTATE OF ROBERT VALLINA;**
**JUAN J. VALLINA,** personally and
**MARTHA VALLINA**, personally and as personal representative of the estate of Robert Vallina, deceased;

    Plaintiffs,

v.

**SUPERINTENDENT WILLIAM J. MAY, and his immediate successor,** in their individual and official capacities as Superintendent of Colorado Mental Health Institute- Pueblo;
**DR. PATRICK K. FOX**, in his individual and official capacity as Deputy Director of Clinical Services for the Office of Behavioral Health;
**COLORADO MENTAL HEALTH INSTITUTE – PUEBLO;**
**DR. GABRIELA L. PETRESCU, M.D.**, in her official and individual capacities;
**LAURA PALMA.,** in her official and individual capacities.

    Defendants.

---

**AMENDED COMPLAINT AND JURY DEMAND**

---

Plaintiffs, by and through their undersigned counsel, hereby bring this Amended Complaint and allege as follows:

**INTRODUCTION**

On September 2, 2104, Robert Vallina took his own life while an inmate at the Teller County Detention Center. Two days prior, he had been returned to Teller County from the Colorado Mental Health Institute in Pueblo (hereinafter referred to as CMHI-P) where he had

been housed for more than a month in order to complete a competency evaluation. The care received by Mr. Vallina while at CMHI-P fell well below industry standards for mental health care, and well below the standards enacted under Colorado Law. CMHI-P made no attempt to confer with Mr. Vallina's treating physician, to confer with family members regarding his mental health history, despite his mother's call to CMHI-P voicing concerns, to request medical records surrounding his history of paranoid schizophrenia and suicide attempts, to meaningfully meet with Mr. Vallina in order to diagnose him, to communicate with the Teller County Detention Center regarding his mental health history, to communicate with Woodland Park Police regarding his arrest history, or to take appropriate steps to protect Mr. Vallina from harm upon his release back to the Teller County Detention Center.

**JURISDICTION AND VENUE**

1. This action arises under the Constitution and the laws of the United States, and is brought pursuant to 42 U.S.C. § 1983.

2. Encompassed within this action is a claim for medical malpractice in accordance with Colorado state and common law.

3. Jurisdiction is conferred on this Court pursuant to 28 U.S.C. §§ 1331 and 1367.

4. Venue is proper in the District of Colorado pursuant to 28 U.S.C. §1391(b). All of the events alleged herein occurred within the State of Colorado, and all of the parties were residents of the state at the time of the events giving rise to this litigation.

5. As to the state claim before this Court based upon its supplemental jurisdiction, all conditions precedent to the filing of the claim have been met. A proper notice of claim

under C.R.S. 24-10-109 was sent to the Office of the Attorney General, which represents CMHI-P. The statutorily required Notice of Claim, under the Colorado Governmental Immunities Act, was received by each within 180 days of the accrual of the cause of action. In addition, a certificate of review pursuant to C.R.S. 13-20-602 is attached.

## PARTIES

*Plaintiffs:*

6. At all times pertinent hereto, the decedent Robert Vallina, was a citizen of the United States of America, and a resident of the State of Colorado.

7. Robert Vallina died intestate on September 2, 2014. Mr. Vallina died unmarried, and without issue, surviving or deceased. He is survived by his parents, Juan and Martha Vallina.

8. At all times pertinent hereto, Plaintiff Martha Vallina, mother of Robert Vallina, has been a citizen of the United States of America and a resident of the State of Colorado.

9. At all times pertinent hereto, Plaintiff Juan Vallina, father of Robert Vallina, has been a citizen of the United States of America and a resident of the State of Colorado.

*Defendants:*

10. The Colorado Mental Health Institute at Pueblo is a state operated inpatient psychiatric hospital, and is under the direction of the Colorado Department of Human Services, Office of Behavioral Health.

11. At all times relevant to the subject matter of this litigation, Defendant William J. May was a resident of the State of Colorado. At all relevant times, Defendant May was acting

under color of state law in his capacity as Superintendent of the Colorado Mental Health Institute in Pueblo.

12. At all times relevant to the subject matter of this litigation, Defendant Dr. Fox was a resident of the State of Colorado. At all relevant times, Defendant Fox was acting under color of state law in his capacity as Deputy Director of Clinical Services for the Office of Behavior Health, and was tasked with directly supervising the Colorado Mental Health Institute in Pueblo Superintendent.

13. At all times relevant to the subject matter of this litigation, Defendant Dr. Petrescu was a resident of the State of Colorado. At all relevant times, Defendant Petrescu was acting under color of state law in her capacity as a psychiatrist at the Colorado Mental Health Institute in Pueblo.

14. At all times relevant to the subject matter of this litigation, Defendant Palma was a resident of the State of Colorado. At all relevant times, Defendant Palma was acting under color of state law in her capacity as an employee at the Colorado Mental Health Institute in Pueblo.

## FACTUAL ALLEGATIONS

15. Robert Vallina was incarcerated at the Teller County Detention Center on May 27, 2014.
16. On June 11, 2014, Mr. Vallina was ordered to undergo a competency evaluation at the Colorado Mental Health Institute in Pueblo, Colorado.
17. He was transferred to CMHI-P on July 29, 2014.
18. Mr. Vallina was a diagnosed paranoid schizophrenic with a documented history of suicide attempts.

19. His schizophrenia caused him to be extremely paranoid, and to hear voices that said negative things about him, and were persecutory in nature.

20. His delusions included a persistent delusion that something was wrong with his genitals. This delusion caused him to seek frequent medical treatment despite being told repeatedly that nothing was wrong.

21. On April 7, 2010 Woodland Park Police were dispatched to the Vallina's residence due to Robert Vallina threatening suicide. A mental health hold, or "M1 hold," was placed on Robert Vallina, and he was transported to the hospital.

22. On May 15, 2010 Woodland Park Police were dispatched to the Vallina's residence due to Robert Vallina threatening suicide. An M1 hold was placed on Robert Vallina, and he was transported to Memorial Hospital in Colorado Springs.

23. On August 19, 2010 Woodland Park Police were dispatched to the Vallina residence due to Robert Vallina threatening suicide. An M1 hold was placed on Robert Vallina, and he was transported to Memorial Hospital in Colorado Springs.

24. On July 23, 2012 Woodland Park Police were dispatched to the Vallina residence due to Robert Vallina threatening suicide. Robert Vallina was transported to the Woodland Park Police Department where he was cleared by medical personnel due to his previous suicidal threats.

25. On August 7, 2012 Woodland Park Police were dispatched to the Vallina residence due to Robert Vallina threatening suicide. An M1 hold was placed on Robert Vallina, and he was transported to Penrose Hospital of psychological evaluation.

26. On December 2, 2012 Woodland Park Police responded to the Vallina residence in regards to a family fight. The police report reflects the fact that Robert Vallina is a schizophrenic, and that the officers are very familiar with the residence due to multiple calls regarding Robert Vallina. Robert was eventually arrested and taken to the Teller County Detention Center.

27. Notes in medical records reflect that during his subsequent incarceration in the Teller County Detention Center in December of 2012, jail medical staff acknowledged a diagnosis of paranoid schizophrenia, and prescribed Haldol for Mr. Vallina.

28. On February 16, 2014 Woodland Park Police were dispatched to the Vallina residence due to a family dispute. Robert Vallina told officers that he was hearing voices, and was going to kill himself to make the voices stop. Officers placed an M1 hold on Robert, and he was transported to Memorial Hospital.

29. On May 21, 2014 Woodland Park Police were dispatched to assist Robert Vallina's probation officer at the Vallina residence. Robert told the officers that he was being poisoned and was losing his mind. An M1 hold was placed on Robert Vallina, and he was transported to Memorial Hospital.

30. Records from Memorial Hospital are replete with references to Robert Vallina's mental illness, and suicide attempts.

31. Records from Aspen Pointe reflect Robert Vallina's history of mental illness and suicide attempts.

32. Records from Cedar Springs reflect Robert Vallina's history of mental illness and suicide attempts.

33. Dr. Scott McClure in Colorado Springs was treating Robert Vallina for paranoid schizophrenia.

34. Records from Penrose Hospital reflect Robert Vallina's history of mental illness and suicide attempts.

35. Records from the Teller County Detention Center reflect Robert Vallina's history of mental illness and suicide attempt.

36. Robert Vallina's arrest records from the Woodland Park Police Department are replete with references to his mental illness, and history of suicide attempts.

37. Robert Vallina was considered an "at risk adult" by Teller County Social Services and was assigned a case worker who met with him frequently.

38. Robert Vallina's case worker's notes are replete with references to his mental illness and suicide attempts.

39. No one at CMHI-P ever requested Robert Vallina's records from Memorial Hospital, Cedar Springs, Aspen Pointe, Teller County, Penrose Hospital or Woodland Park.

40. No one at CMHIP ever spoke with Robert Vallina's treating physician, Dr. McClure, Robert Vallina's parents, or Robert Vallina's case worker.

41. No one at CMHI-P ever questioned or tried to confirm Robert Vallina's assertion that he had never attempted suicide.

42. Robert Vallina believed he was being poisoned.

43. Records from CMHI-P reflect Robert Vallina showing signs of paranoia, and of his continued belief that he was being poisoned.

44. Records from CMHI-P reflect that Robert Vallina weighed 170.9 pounds upon entry into the state hospital. Autopsy records show that he weighed 158 pounds when his autopsy was conducted on September 2, 2014.

45. Robert Vallina became increasingly agitated upon learning that he was going to be returned to Teller County Detention Center, and was prescribed anti-anxiety medication.

46. Robert Vallina told his mother, Martha Vallina, that he would kill himself if he were returned to the Teller County Detention Center. Martha Vallina called CMHI-P to inform them of his suicidal threats, and spoke with Laura Palma. Laura Palma claimed to be a social worker, and told Martha Vallina not to worry, that they were "the professionals," and that Robert was "faking."

47. Robert Vallina was returned to the Teller County Detention Center on August 29, 2014.

48. Robert Vallina committed suicide at the Teller County Detention Center in the early morning hours of September 2, 2014.

**CLAIMS FOR RELIEF**

**COUNT I**

42 U.S.C. § 1983- Eighth Amendment Violation- Failure to Provide Medical

Care and Treatment

All Defendants

49. Plaintiffs hereby incorporate all other paragraphs of this Complaint as if fully set forth herein.

50. At all times relevant to the allegations in this Complaint, Defendants acted or failed to act under color of law.

51. At all times relevant to the allegations in this Complaint, Defendants knew or should have known of Mr. Vallina's mental health condition.

52. At all times relevant to the allegations in this Complaint, Defendants knew or should have known of Mr. Vallina's suicidal propensities.

53. At all times relevant to the allegations in this Complaint, Defendants knew or should have known of Mr. Vallina's need for proper medical treatment.

54. Mr. Vallina was being held in the locked portion of CMHI-P pursuant to his pretrial detention for alleged crimes in Teller County. "Under the Fourteenth Amendment's due process clause, pretrial detainees… are entitled to the same degree of protections regarding medical attention as that afforded convicted inmates under the Eighth Amendment." *Barrie v. Grand County, Utah*, 119 F.3d 862, 867 (10th Cir. 1997).

55. CMHI-P's duty to provide medical care included psychological and psychiatric care. See *Riddle v. Mondragon*, 83 F.3d 1197, 1202 (10th Cir. 1996).

56. CMHI-P was deliberately indifferent to the serious mental health needs of Mr. Vallina, and failed to provide adequate psychological and psychiatric care thereby violating his Eighth Amendment rights.

57. Robert Vallina's CMHI-P records are replete with references to his paranoia, to his belief that he was being poisoned, to his having conversations with himself, and other strange behavior. His illness was such that a lay person could recognize his need for treatment. In addition, Robert Vallina had an actual diagnosis of paranoid schizophrenia, and was

under the care of a physician, and had a plethora of doctors and social workers who recommended treatment for his schizophrenia.

58. Had any one at CMHI-P done a precursory review of any of Robert Vallina's arrest, jail or medical records or sought information from his family, they would have quickly been alerted to his propensity towards suicide attempts.

59. In fact, Martha Vallina called CMHI-P and specifically told an employee that her son told her he was going to commit suicide if he were returned to Teller County Detention, and they deliberately disregarded her warnings telling her that her son was "faking" and they were "the professionals."

60. CMHI-P records reflect increased agitation and anxiousness prior to Mr. Vallina's return to the Teller County Detention Center, to such an extent that they prescribed anti-anxiety medication, and they deliberately disregarded this increased agitation and anxiousness in that they failed to adequately assess the cause or even alert the Teller County Detention Center of Robert Vallina's changed behavior.

61. CMHII-P records contain notes showing that they instead told Robert Vallina that nothing was wrong with him, and returned him to Teller County with a diagnosis of malingering.

62. Robert Vallina committed suicide several days later.

63. The acts and failures to act by these Defendants were conducted within the scope of their official duties and employment.

64. The acts and failures to act by these Defendants were the legal and proximate cause of Mr. Vallina's death.

65. When Mr. Vallina's most recent treating psychiatrist reviewed the events surrounding the denial of care to Mr. Vallina and his death, Dr. Scott McLure wrote that Mr. Vallina's death was entirely preventable.

66. An independent medical expert, Dr. Pagos Voskanian, has also reviewed the records documenting the events surrounding Robert Vallina's death, and also opines that Robert Vallina's death was entirely preventable.

67. CMHI-P and its staff not only failed to even attempt to treat Robert Vallina, records show that they cruelly, and with deliberate indifference repeatedly told Mr. Vallina, a paranoid schizophrenic with a history of suicide attempts, hearing persecutory voices, delusions of being poisoned and delusions of painful medical problems, that he was faking and nothing was wrong with him.

68. The acts and failures to act by these Defendants show a clear deliberate indifference that intentionally deprived him of his right to be free from cruel and unusual punishment and of rights and privileges secured to him by the Constitution of the United States, and caused his other damages, including his death.

### COUNT II

Medical Malpractice

Dr. Petrescu

69. Plaintiffs hereby incorporate all other paragraphs of this Complaint as if fully set forth herein.

70. Dr. Petrescu was Robert Vallina's assigned treating physician while he was incarcerated at CMHI-P.

71. Dr. Petrescu owed Robert Vallina a duty to provide appropriate medical care in accordance with her oath as a physician, the law of the State of Colorado, and the United Stated Constitution.

72. She breached this duty by failing to provide care that even approached the standard of care in the industry.

73. Dr. Petrescu spent approximately 75 combined minutes with Robert Vallina, over the entirety of his incarceration at CMHI-P, failed to even attempt to obtain any records regarding his history, and failed to even attempt to speak to his family or his treating physician.

74. Dr. Petrescu's failure to provide adequate medical care, and improper diagnosis was the proximate and legal cause of his death.

75. Robert Vallina did in fact die.

76. Dr. Petrescu's actions fell well below the standard of care in the psychiatric industry.

77. Dr. Petrscu's actions caused damages to Robert Vallina, and caused damages to the Plaintiffs.

**COUNT III**

42 U.S.C. § 1983 Fourteenth Amendment Violation- Denial of Due Process

78. Plaintiffs hereby incorporate all other paragraphs of this Complaint as if fully set forth herein.

79. Mr. Vallina was a pretrial detainee at CMHI-P. At the time of his death, Mr. Vallina had not yet been found guilty of the charges for which he had been held.

80. The denial of necessary medical care constituted punishment imposed upon Mr. Vallina. Such punishment, in and of itself, constituted a violation of the Eighth Amendment if Mr. Vallina had been incarcerated rather than detained; thereby making the conduct of the Defendants all the more egregious.

81. The acts and omissions of the Defendants intentionally deprived Mr. Vallina of his right to due process and of rights and privileges secured to him by the Constitution of the United States, and caused him other damages.

## COUNT IV

Negligence per se- Violations of C.R.S. 27-65-101 et seq. Care and Treatment of Persons with Mental Illness

82. Plaintiffs hereby incorporate all other paragraphs of this Complaint as if fully set forth herein.

83. Mr. Vallina had a right under Colorado Law to skillful, and humane treatment suited to his needs, and to be treated with respect and dignity.

84. Instead he was told he was faking, and his concerns of being poisoned, and threats that he would commit suicide were not taken seriously.

85. Mr. Vallina had a right to have his family members involved in his treatment, and diagnosis, and the staff a CMHI-P did not attempt to contact Mr. Vallina's family, and in fact, ignored his mother's concerns that he was suicidal.

86. Mr. Vallina was a mentally ill person of the class of people the statute seeks to protect.

87. The Defendants had a duty to treat Mr. Vallina with dignity, respect, and provide treatment suited to his needs.

88. The Defendants breached their duty to provide such treatment.

89. The Defendants breach was a proximate cause of Mr. Vallina's death.

**PRAYER FOR RELIEF**

**WHEREFORE,** Plaintiffs respectfully request that this Court enter judgement in their favor against Defendants, and grant:

a) Appropriate relief at law and equity;

b) Injunctive relief and other appropriate equitable relief such as a monitor to oversee the Office of Behavioral Health and Colorado Mental Health Institute- Pueblo to ensure compliance with state and federal law;

c) Economic losses on all claims allowed by law;

d) Compensatory and consequential damages, including damages for emotional distress, loss of enjoyment, of life, and other pain and suffering on all claims allowed by law in an amount to be determined at trial;

e) Punitive damages on all claims allowed by law and in an amount to be determined at trial;

f) Attorneys' fees and the costs associated with this action, including expert witness fees, on all claims allowed by law;

g) Pre-and post-judgement interest at the highest lawful rate;

h) Any further relief that this court deems just and proper, and any other relief as allowed by law.

**JURY DEMAND**

**Plaintiffs hereby demand a trial by jury on all issues so triable.**

Respectfully submitted this 29th day of September, 2016.

                                            **MACEAU LAW:**

                                           */S/ Heather Mitchell*
                                           Heather Mitchell
                                           John M. Scorsine
                                           1465 North Union Blvd. #100.
                                           Colorado Springs, CO 80909
                                           Phone: (719) 633-2222
                                           Email: heather@maceaulaw.com,
                                           john@maceaulaw.com

Martha Vallina
281 Dewell Rd.
Woodland Park, CO 80863

Juan J. Vallina
281 Dewell Rd.
Woodland Park, CO 80863

The Estate of Robert Vallina
281 Dewell Rd.
Woodland Park, CO 80863